LAND, J.
This is a suit for balance due on account, instituted in the name of the plaintiff corporation, appearing through its *161 president, J. C. Ackers, alleged to have been duly authorized in the premises.
The defendant excepted as follows:
“That the Jeanerette Rice & Milling Company, Ltd., is a defunct corporation now in the hands of liquidators; and that there has been no meeting of the board of directors for two years, and at no meeting was the ex-president of this corporation, J. C. Ackers, ever authorized to file this suit.”
This exception was tried, and' there was judgment in favor of the defendant sustaining the exception and dismissing the suit. Plaintiff has appealed.
The evidence shows affirmatively that J. C. Ackers, as president of the corporation, was never authorized by the board of directors to bring this suit. It appears that no meeting of the board of directors has been held since the sale of the mill property in the year 1906. It further appears that the president consulted the members of the board as to bringing suits against all the debtors of the corporation, and that a majority of them approved of such action. The charter of the corporation gave the president no authority to institute suits in the name of the company.
In German Evangelical Congregation v. Pressler, 14 La. Ann. 811, it was held that courts of justice cannot regard the wishes of a majority, of the members of a corporation unless expressed in a valid form in conformity with the by-laws and charter; citing the case of St. Mary’s Church, In re, 7 Serg. & R. (Pa.) 530. In Ross v. Crockett, 14 La. Ann. 823, it was held that a majority of a board of trustees could not undertake to act in their individual names for the board itself.
In Peirce v. N. O. Building Co., 9 La. 404, 29 Am. Dec. 448, it was held that where the assent of a majority of the stockholders was not expressed in a meeting of stockholders, but by each one separately, at different times, and evidenced not by the corporate minutes, but by a separate paper, the assent is without force.
Directors can bind the corporation only by acting together as a board. A majority of them cannot undertake to act in their individual names for the board itself. 10 Cyc. 774, 775.
It follows that the president instituted this suit without any authority from the board of directors of the corporation. Under the provisions of the charter, it is provided that all citations or legal process shall be served upon the president, or, in case of his absence or inability to act, upon the vice president, but no power to sue is vested in either officer.
The board of directors, in which all the corporate powers were vested by the charter, was the only representative of the corporation competent to authorize suits in its name.
Corporations act judicially through their proper representatives, who, however, need not be named in the petition. Code Prac., art. 112; N. O. Terminal Co. v. Teller, 113 La. 736-738, 37 South. 624. When a suit is brought in the name of a corporation through its president, special authorization from the board of directors must be proven. Hoffpanir v. Wise, 38 La. Ann. 704.
Where a suit is brought in the name of the corporation alone, it suffices to prove that it was brought by authority of the board of directors. Insurance Oil Tank v. Scott, 33 La. Ann. 946, 39 Am. Rep. 286. In such a case the affidavit of the vice president annexed to the petition is sufficient proof that the suit was authorized. Lacaze & Reine v. Creditors, 46 La. Ann. 239, 14 South. 601. In the N. O. Terminal Case, supra, it was held that whether a suit be brought in the name of the corporation, or in its name through a representative, the question is one of authority to bring the suit, a matter of substance and not of form. In the case at *163 bar the authority of the president is alleged, but has not been proved.
The office of president in itself confers no power to bind the corporation or control its property. The president’s power as an agent must be sought in the organic law of the corporation, in a delegation of authority from it, directly or through the board of directors, formally expressed, or implied from a habit or custom of doing business. 10 Cyc. 903. In the case at bar, the charter after providing that “the business and affairs and corporate powers shall be transacted by a board of directors,” declares that “three members of said board, including the president, shall constitute a quorum for transaction and management of all business of said corporation.” No powers were expressly delegated by the board to the president, and it has not been shown that the entire management of the business of the corporation was left in his hands. The case here presented is one where the president, long after the corporation had sold all of its property and gone out of business, undertook, with the verbal assent of a majority of the directors, to sue and collect the debts of the corporation for the purpose of liquidating its affairs. The charter provides for the liquidation of the corporation by commissioners elected by the stockholders. It may be conceded for the purposes of the argument that a president intrusted by a board of directors, meeting at long intervals, with the entire management of a large business corporation, has the implied power to “prosecute and defend ordinary litigation of the corporation and appoint attorneys to that end” (10 Cyc. 904), but we have no such case before us. Whether such a doctrine is consonant with our Code and jurisprudence need not now be decided.
It is therefore ordered that the judgment appealed from be affirmed, and that plaintiff pay the costs of appeal.